# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | |
|---|---|
| LISA D. MARTIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 6:11-cv-55 |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Lisa D. Martin ("Martin") filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding her not disabled and therefore ineligible for disability insurance benefits, ("DIB"), under the Social Security Act, ("Act"), 42 U.S.C. §§ 401-433.

Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, argument of counsel and the applicable law, and conclude that the Administrative Law Judge ("ALJ") erred by failing to consider the treatment notes of Martin's treating psychiatrist, Michael Judd, M.D. As such, I **RECOMMEND DENYING** the Commissioner's motion for summary judgment (Dkt. # 21), **GRANTING IN PART** Martin's motion for summary judgment (Dkt. # 17), and reversing and remanding this case for further administrative consideration consistent with this Report and Recommendation.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Martin failed to demonstrate that she was disabled under the Act. Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Martin bears the burden of proving that she is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)(2006)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education and work experience. See 42 U.S.C. §§ 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the

claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Martin was born on July 28, 1965 (Administrative Record, hereinafter "R." 53, 147). Martin's date last insured was December 31, 2014. (R. 36.) Thus, Martin must show that her disability began before that date, and existed for twelve continuous months to receive DIB benefits. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a). Martin has a high school diploma. (R. 53.) Her past relevant employment includes working as a delivery driver for a car dealership from September 1996 to December 2005 (light, semi-skilled work), and working as a delivery driver for Advance Auto Parts from June 2006 through December 2009 (medium, semi-skilled work). (R. 54, 167-69.) Martin was fired from her position with Advance Auto Parts after a confrontation with her manager in December 2009. (R. 167.)

Martin reported that during the relevant period she had the capacity to care for her personal needs, visit or call her mother daily, pay bills, wash dishes and perform laundry. (R. 188-89.) Martin is able to drive a car and shop for necessities and food twice a week. She spends her time watching television, reading, and talking to or texting her friends or family. (R. 191.) She reported that she needs special reminders to take her medications, is moody and irritable, and handles stress poorly. (R. 189-193.)

## Claim History

On March 17, 2010, Martin filed an application for DIB, claiming that her disability began on December 1, 2009, due to problems with diabetes, diabetic neuropathy, depression, obsessive-compulsive disorder, and emotional problems. (R. 145-153, 167.) The state agency denied her application at the initial and reconsideration levels of administrative review. (R. 79, 85.) On May 3, 2011, Administrative Law Judge ("ALJ") Brian P. Kilbane held a hearing, at which Martin was represented by Robert Golcheski, and included testimony from Martin, one of Martin's friends, and vocational expert Lori Cowan. (R. 50-75.) On May 27, 2011, the ALJ entered his decision denying Martin's claim for DIB. (R. 33-49.)

The ALJ found that Martin's diabetes mellitus and peripheral neuropathy were severe impairments, and that her depression and anxiety were non-severe impairments. (R. 38.) Considering these impairments, the ALJ determined that Martin retained the RFC to perform a limited range of light work. Specifically, the ALJ limited Martin to lifting and carrying 20 to 25 pounds frequently, standing and walking for 4 hours in an 8 hour workday, and sitting 6 hours in an 8 hour workday. The ALJ found that Martin can occasionally climb ramps and stairs, crouch or crawl; frequently stoop and balance; never climb ladders, ropes and scaffolds; and should

4

avoid concentrated exposure to hazards. (R. 40.) Given the evidence obtained from the vocational expert at the hearing, the ALJ determined that Martin can perform her past relevant work, or alternatively, can perform work as a mail clerk and cashier, both of which exist in significant numbers in the economy. (R. 43-44.) Thus, the ALJ concluded that Martin is not disabled under the Act. (R. 44.) On October 18, 2011, the Appeals Council denied Martin's request for review, and this appeal followed. (R. 1-3.)

## ANALYSIS

This appeal presents a single issue of whether substantial evidence supports the ALJ's finding of no disability where the ALJ failed to consider the treatment notes of Martin's treating psychiatrist, Dr. Judd[1]. The record reflects that the ALJ considered the Martin's physical impairments and developed an RFC to accommodate the limitations that Martin experiences from her diabetes and diabetic neuropathy. The ALJ erred, however, by not considering the treatment that Martin received from her psychiatrist for her depression, bipolar disorder and other emotional problems. After a careful review of the record as a whole, the court finds that this error requires remand of this case to the Commissioner under sentence four of 42 U.S.C. § 405(g).

In December 2009, Martin was diagnosed with depression and anxiety by her primary care physician, Valerie Renninger, M.D. (R. 276-77.) Ms. Renninger prescribed medications for these conditions, including Hydroxyzine, Cymbalta and Trazodone. (R. 268, 270, 274.) In June 2010, Martin saw Nadia Meyer, M.D. in a consultative exam, who diagnosed her with depression and an anxiety disorder, but made no mention of any mental limitations in her opinion. (R. 286-

---

[1] At the hearing on the parties' cross motions for summary judgment, the parties agreed that the only issue before the court is whether the ALJ's failure to consider Dr. Judd's treatment notes constitutes reversible error. Thus, the court will not discuss Martin's physical impairments and RFC, but will focus solely on her alleged mental impairments.

90.) On July 20, 2010, state agency physician Michael Hartman, M.D., performed a functional capacity evaluation, and found that Martin had no severe mental impairments. (R. 201-02). On July 29, 2010, Dr. Renninger noted that Martin was depressed, irritable, anxious, angry, and moody. (R. 300-01.) She diagnosed Martin with depression with anxiety and mood disorder, and referred Martin to a psychiatrist. (R. 300-01.)

On August 10, 2010, Martin began treatment with Joanne Green, a Licensed Clinical Social Worker ("LCSW"), who noted that Martin had been diagnosed with bipolar disorder. (R. 336-38.) Ms. Green continued to treat Martin from August 2010 through December 2011. (R. 308, 310, 311, 316, 317, 319, 325, 328, 336.) Ms. Green consistently noted that Martin had a blunted affect, anxious mood, moderate aggression, and was depressed, irritable and had only moderate anger control. (R. 308, 311, 317, 328, 336.) Ms. Green listed Martin's diagnosis as "bipolar affective disorder, depressed," and stated that Martin's medication was being managed by Dr. Judd. (R. 308, 311, 317, 325, 328, 336.) The record contains four treatment records from Dr. Judd, dated August 27, 2010 through January 21, 2011. (R. 331, 333, 334, 335.) Dr. Judd's handwritten notes are difficult to decipher; however, it is clear from his records that he diagnosed Martin with bipolar disorder, and prescribed medications including Abilify, Cymbalta, Lamictal and Trazodone. (R. 331, 333, 334, 335.)

On March 30, 2011, Ms. Green filled out a medical source statement, stating that Martin had a poor ability to carry out detailed instructions, to maintain her attention/concentration for extended periods, to work with or near others without being distracted, and to complete a normal workday or workweek. Ms. Green further stated that Martin maintained a poor ability to accept instructions, to respond appropriately to criticism from supervisors, get along with co-workers or

6

peers, and set realistic goals or make plans independently of others. (R. 323-24.) Ms. Green listed Dr. Judd's diagnosis of Martin as Bipolar I as support for her assessment. (R. 324.)

There is no question that the ALJ does not refer to the treatment notes of Dr. Judd in his decision. The ALJ's decision makes clear that he mistakenly believed and found significant that Martin had not been referred to or received treatment from a psychiatrist or other mental health specialist.

In step two of the sequential evaluation process, the ALJ listed Martin's mental impairments as depression and anxiety, and found that they were non-severe. (R. 38.) In making this determination, the ALJ relied upon the treatment notes of Dr. Renninger, and the opinions of two state agency physicians, Drs. Hartman (dated July 20, 2010) and Duckwall (dated August 30, 2010), who reviewed the record as a whole and found Martin's mental impairments to be non-severe. The ALJ stated at step two that "[Martin] has not been referred to a specialist and on agency consultative exam reported that she is not seeing a psychiatrist; however her primary care physician treats her with psychotropic medication."[3] (R. 39.) Not only is the statement by the ALJ that Martin has not been referred to a specialist plainly incorrect, but the ALJ makes no mention of Martin's diagnosis of bipolar disorder, nor does he discuss Martin's treatment with Ms. Green and Dr. Judd in step two of his analysis. (R. 38-40.)

In step four of his analysis, the ALJ found that Martin's statements concerning the intensity, persistence and limiting effects of her symptoms are not fully credible, and stated, "[m]entally, she has not been hospitalized for a psychiatric condition and she receives treatment from a licensed social worker." (R. 42.) The ALJ then discussed the medical source statement provided by Ms. Green and rejected her opinion on the basis that "[Martin] has not been

---

[3] The consultative exam, performed by Nadia Meyer, M.D., took place on June 29, 2010, before Martin began treatment with Dr. Judd.

7

hospitalized for any psychiatric condition and is being treated only with medication and counseling with a social worker." (R. 43.)   He also noted, "[Martin] has had very modest mental treatment and she has not been found to be fully credible." (R. 43.)  Based upon these incorrect findings, the ALJ does not include any mental limitations in Martin's RFC or in the hypothetical question posed to the vocational expert. (R. 40, 66-68.)

There is no excuse for the ALJ's failure to recognize that Martin was referred to and receiving treatment from a psychiatrist.  The records before the ALJ at the time of his decision include four treatment notes from Dr. Judd. (R. 311-35.)  They also include: 1) the treatment notes of Ms. Green, which repeatedly refer to Dr. Judd as managing Martin's medication (R. 308, 311, 317, 325, 328, 336); 2) the medical source statement provided by Ms. Green listing Dr. Judd's diagnosis as support for her assessment (R. 324); 3) the treatment notes of Dr. Renninger referring to Martin's treatment with Dr. Judd (R. 306-307), 4) the treatment notes of Lynn McBride, LPC, referring to Dr. Judd (R. 314); and, 4) the hearing transcript wherein the ALJ discusses with Martin her treatment with Dr. Judd (R. 55, 57).

The ALJ's failure to consider Dr. Judd's treatment of Martin constitutes error.  An ALJ is required to consider all of the relevant evidence in the administrative record.  "Before a court may find that an ALJ's decision is supported by substantial evidence, the ALJ's decision must analyze all the relevant evidence and sufficiently explain his findings and rationale. The court faces a difficult task in applying the substantial evidence test when the ALJ's opinion does not show that the ALJ properly considered all of the relevant evidence." Paxton v. Astrue, 2012 WL 3011017, at *1 (W.D. Va. July 23, 2012)(internal citations omitted). See also Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439 (4th Cir.1997)("Before we can determine whether

8

substantial evidence supports an administrative determination, we must 'first ascertain whether [the agency] has discharged [its] duty to consider all relevant evidence.'")(citing Jordan v. Califano, 582 F.2d 1333, 1335 (4th Cir. 1978)); Saul v. Astrue, 2011 WL 1229781, at * 4 (S.D.W.Va. March 28, 2011)(substantial evidence standard was inapplicable where ALJ "utterly failed" to acknowledge the existence of a treating physician's opinion). Dr. Judd's treatment notes are clearly relevant to the issue of whether Martin suffers from a severe mental impairment.

The court cannot find that the ALJ's failure to properly consider the evidence in this case is "harmless." Errors are harmless in social security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error. See Austin v. Astrue, 2007 WL 3070601, *6 (W.D.Va. Oct.18, 2007) (citing Camp v. Massanari, 22 Fed.Appx. 311 (4th Cir.2001)) (citing Newton v. Apfel, 209 F.3d 448, 458 (5th Cir.2000)). It is impossible to know whether the ALJ's decision would have changed had he considered all of the evidence in the record. Although this court notes that Dr. Judd's treatment records are illegible, they at least establish that: 1) Martin was referred to a psychiatrist; 2) Martin was receiving treatment from a psychiatrist; 3) the psychiatrist diagnosed Martin with bipolar disorder; and 4) the psychiatrist prescribed medications for Martin including Abilify, Cymbalta, Lamictal and Trazodone. Dr. Judd's treatment records are the only evidence from a mental health specialist in this case. Dr. Judd's diagnosis of Martin with bipolar disorder contradicts the ALJ's conclusion that Martin suffers from non-severe depression and anxiety. It is further contrary to the ALJ's finding that Martin's treatment has been "very modest," and that she was not referred to a specialist. Additionally, the consultative examiner opinion relied upon by the ALJ was rendered

9

before Martin began treatment with Ms. Green and Dr. Judd. Thus, it cannot be said that the consultative examiner's opinion accounted for Dr. Judd's diagnosis and treatment of Ms. Martin.

The ALJ must articulate accurate reasons in support of his decision. It is not the role of the court to re-weigh evidence simply ignored by the ALJ or from which he draws an incorrect inference. See Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002). It may be that the ALJ should have expanded the record and obtained legible records from Dr. Judd; or, perhaps the ALJ could make his decision without further information from Dr. Judd. The court will not substitute its judgment for the ALJ as to whether Martin suffers from a severe mental impairment and what impact that has on her ability to engage in substantial gainful employment. The ALJ's erroneous analysis of Martin's mental health treatment calls into doubt his conclusion that Martin's mental impairments are non-severe, his finding that Martin's subjective complaints are not fully credible, and his complete rejection of Ms. Green's medical source statement. Accordingly, I recommend that the defendant's motion for summary judgment be **DENIED**, Martin's motion for summary judgment be **GRANTED IN PART**, and this case be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g).

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as

10

well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: February 1, 2013

/s/ Robert S. Ballou

Robert S. Ballou
United States Magistrate Judge